UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WAYNE WILLIAM TUCKER,

     Plaintiff,

v.                                 Case No. 5:17cv280-MCR-HTC

JULIE L. JONES, et al.,

     Defendants.

_____/

<u>REPORT AND RECOMMENDATION</u>

     This matter is before the Court on Plaintiff Wayne William Tucker's *pro se* third amended complaint (ECF Doc. 22), filed pursuant to 42 U.S.C. § 1983.  Upon review of the complaint, it is evident the facts as presented fail to support a viable claim for relief, even when read liberally and in favor of Tucker.  It likewise is clear Tucker cannot cure the deficiencies even with a more carefully drafted complaint and thus an additional amendment in this case would be futile.  The undersigned thus recommends the case be dismissed under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted.

## I.    PLAINTIFF'S THIRD AMENDED COMPLAINT

     Tucker is an inmate at the Okaloosa Correctional Institution.  ECF Doc. 1.  He filed this action on November 9, 2017.  ECF Doc. 1.  His complaint arises out of

events that occurred while he was at Everglades Correctional Institution and Santa

Rosa Correctional Institution.  *Id.*  His initial complaint identified fifty-five (55)

defendants and included eighty (80) pages of facts and ten (10) claims.  *Id.*  Tucker

was directed to amend his complaint to comply with the Local Rules, and after

several extensions, filed a second amended complaint on July 19, 2018.  ECF Doc.

16.  Tucker's second amended complaint identified thirty-seven (37) defendants,

contained a shortened statement of facts, this time spanning fourteen (14) pages and

asserting eight (8) claims.  *Id.*  Thus, Tucker's second amended complaint included

substantive changes from his first complaint.  Accompanying his second amended

complaint was a motion to accept exhibits, which the Court denied.  ECF Doc. 17.

Instead, the Court directed Plaintiff to file a third amended complaint, attaching to

that complaint the exhibits he wanted to include.  ECF Doc. 18.  On December 14,

2018, after an extension of time, Tucker filed the instant third amended complaint.

In the third amended complaint, which consists of twenty-seven (27) pages

and 252 paragraphs, and 325 pages of exhibits, Tucker names thirty-seven (37)

defendants[1] and asserts eight (8) causes of action.  ECF Doc. 22.  Tucker  seeks

---

[1] The named Defendants are as follows: Julie L. Jones, Secretary of the Florida Department of Corrections ("FDOC"); Rick Scott, Governor of the State of Florida; Florida Department of Health, Division of Medical Quality Assurance ("FDOH"); Corizon Health Services, Inc. ("Corizon"); Centurion Health Services, Inc. ("Centurion"); Gilead Sciences, Inc.; Ebony O. Harvey, Doctor/Director of Health Services Administration for the FDOC; Tom Reimers, Doctor/Director of Health Services Administration for the FDOC; T. Bowden, Representative for the Secretary of the FDOC; A. Paynter, Representative for the Secretary of the FDOC; J. David,

$50,000,000.00 against each Defendant as well as punitive damages of $50,000,000.00. *See id.* at 25. He also seeks declaratory and injunctive relief.

The crux of Tucker's complaint arises out of the medical treatment he claims was provided, and not provided, for his Acquired Immune Deficiency Syndrome ("AIDS"). *See* id. at 11. Specifically, Tucker complains of being denied continuation of his 4,000 calorie diet and Ensure supplement drink after his transfer to Santa Rosa CI on various occasions by various medical personnel. He also complains of the procedure for submitting sick call requests, and having to go through sick call to continue his prescribed medical plan. He complains about receiving disciplinary reports and being sent to confinement. He further complains about filing grievances that were denied. He alleges his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments, as well as the Americans with Disabilities Act ("ADA"), were violated. The following facts and information are derived from Tucker's third amended complaint:

---

Representative for the Secretary of the FDOC; S.R. Simpson, Nurse at Santa Rosa Correctional Institution Annex ("SRCI"); Sheila Kay Szalai, Nurse at SRCI; Marsha Jean Cook Nichols, Nurse at SRCI; T. Shaner, Nurse at SRCI; Mrs. Kelly, Nurse at SRCI; W.D. Rummel, Doctor/CHO/Medical Director at SRCI; S. Schwartz, Doctor/CHO/Medical Director at SRCI; L.E. Brown, Doctor/Medical Director at SRCI: Denis A. Vilchez, Doctor/Medical Director at SRCI; R. Comerford, Warden at SRCI; Jimmy Coker, Warden at SRCI; C. Padgett, Assistant Warden at SRCI; C. Courtney, Assistant Warden at SRCI; Mr. Shaner, Captain at SRCI; R. Lenzo, Captain at SRCI; Cheryl Richardson, Lieutenant at SRCI; R.F. Caldwell, classification officer at SRCI; J.R. Brunson, classification officer at SRCI; C.A. Williams, classification officer at SRCI; C.M. Bishop, classification officer at SRCI; L.W. Mayo, Warden at Everglades Correctional Institution; J. Wilbert, correctional officer at SRCI; L.A. Lewis, Nurse at SRCI; Mrs. Gibson, Pharmacist at SRCI; Mrs. S. Melvin, Nurse at SRCI; and Mrs. Douglas, Nurse at SRCI.

Tucker's third amended complaint begins with 19 paragraphs of general background facts that are incorporated into each of his Counts.  Tucker was initially treated at Central Florida Reception Center and prescribed a diet, supplements as well as several other medical treatments.  *See id*.  He was then transferred to Zephyrhills Correctional Institution, where he was incarcerated until 2013.  Subsequently, he was transferred to Everglades Correctional Institutional and complains that his medical treatment there included new medication, which caused numerous side effects.  *See id*. at 12.  He states that he complained to the medical department, although he does not identify any specific people with whom he spoke, and that he was then transferred from Everglades CI to Santa Rosa CI.  *See* ECF Doc. 22 at 13.

Tucker alleges that former Governor Rick Scott developed a policy that the Florida Department of Corrections would take bids from private contractors for health care responsibilities to save money, and alleges Julie Jones carried out this policy, as then Secretary of the FDOC.[2]  *See id*.  Tucker further claims that Jones' "representatives," consisting of several of the named Defendants, "know[] of and condone[] or encourage[] the custom of the Florida Department of Corrections health care providers/contractors [identified as some of the Defendants] to deny

---

[2] Mark S. Inch replaced Julie Jones as the Secretary of the FDOC and therefore is automatically substituted for Jones as a Defendant pursuant to Fed. R. Civ. P. 25(d).

necessary medical care for Plaintiff and other inmates serious medical needs, medical treatment and/or medical conditions from 10/17/2014, until now….” *See id*. Tucker complains that his current medical providers, the Florida Health Department and Centurion Health Services, Inc., are “still continually disregarding the seriousness of my chronic medical condition.” *See id.* at 14. He claims those providers are refusing to see him through sick call procedures to renew his prescribed medication and “obstruct and/or deny him of seeing the doctor.” *See* ECF Doc. 22 at 14.

In Claim One of his Third Amended Complaint, Tucker alleges that Defendants Comerford, Padgett, Captain Shaner, Dr. Brunson, Williams and Simpson violated his rights under the 1st, 4th, 5th, 8th and 14th Amendments. *See id*. The facts Tucker alleges to support this claim are that in October 2014, Nurse Simpson denied him a 4,000 calorie diet, stating he did not qualify for the pass. *See id.* After a confrontation with Simpson over the pass, Simpson called security and Captain Shaner authorized a disciplinary report. *See id.* A disciplinary hearing was held on November 6, 2014, before Defendants Brunson, Williams and Bishop, and Tucker was found guilty and sentenced to thirty (30) days confinement. *See id.* at 15. Based on those facts, Plaintiff seeks compensatory damages of $10,000,000 against the Defendants, punitive damages in the same amount and mental and emotional damages in the same amount. *See* ECF Doc. 22 at 15.

In Count Two, Tucker seeks recovery against Jones, David, Harvey, Comerford, Szalai, Simpson, Dr. Schwartz and Corizon for refusing to renew the prescribed 4,000 calorie diet and, thus, violating his rights under the American with Disabilities Act and the 5th, 8th and 14th Amendments. *See id.* The facts Tucker alleges to support this claim are similar to the above facts, with the addition that he was seen by Nurse Szalai on October 27, 2014, who renewed all his medical passes except the 4,000 calorie diet and that during his 30-day confinement, he was seen by Defendant Nurse Douglas and Defendant Dr. Schwartz, who re-prescribed his 4,000 calorie diet and Ensure supplemental drink from November 12, 2014, to February 12, 2015. *See id.* at 16. He further contends that he filed a grievance which was denied and appealed it, which was also denied. *See id.* He blames Defendants Jones, David and Dr. Harvey for this denial and seeks $8,000,000.00 in compensatory, $8,000,000.00 in punitive and $8,000,000.00 in mental and emotional damages. *See id.*

In Count Three of his Third Amended Complaint, Tucker asserts that Defendants Jones, David, Harvey, Comerford, Szalai, Dr. Schwartz and Corizon violated his rights under the 5th, 8th and 14th Amendments by acting with reckless disregard, bad faith and malice in denying him medical care. *See* ECF Doc. 22 at 16. In support of Count Three, Tucker alleges the same allegations that were in

Count Two, and like Count Two, seeks $8,000,000.00 in compensatory, $8,000,000.00 in punitive and $8,000,000.00 in mental and emotional damages. *Id*.

In Count Four of his Third Amended Complaint, Tucker asserts claims against the same Defendants identified in Counts Two and Three, plus Defendants Courtney and Brown, and alleges they violated his rights under the ADA and 5th, 8th and 14th Amendments by failing to properly and timely renew his prescribed pain medication. *See id*. Specifically, Tucker claims that Szalai evaluated him and initially prescribed Extra Strength Excedrin for migraines and Naproxen for joint pain, but then discontinued the Excedrin and increased the dosage for Naproxen *See id*. He claims Naproxen does not take away his pain and that he filed a grievance, which was denied by Defendants Courtney, Brown, Szalai and Jones. *See id*. He seeks $8,000,000.00 in compensatory, $8,000,000.00 in punitive and $8,000,000.00 in mental and emotional damages. *See* ECF Doc. 22 at 18.

In Count Five, Tucker asserts Jones, Bowden, Reimers, Courtney, Coker, Nichols, Simpson, Dr. Vilchez, Dr. Rummel, Brown, Corizon and Centurion "are in a conspiracy to make a larger profit and commit extortion by making Plaintiff submit multiple sick call request by refusing to allow him to see doctor/specialist for a serious medical need of renewing already prescribed pain medications, ensure supplemental drinks, medical passes," thereby violating his rights under the 1st, 5th, 8th and 14th Amendments. *See id*. at 18. In support of Count Five, Tucker alleges

the same facts as contained in the other counts, and adds that on February 10, 2016,

Dr. Brown re-prescribed a 4,000 calorie diet and Ensure for 90 days; that on April

18, 2016, the prescription for Extra Strength Excedrin expired; that he was seen on

the same day by Nurse Kelly and then by Nurse Nichols on April 22, 2016, who did

not renew the Excedrin and who also discontinued the Ensure supplement. *See id*.

He was next seen on April 29, 2016, by Nurse Simpson for a renewal of the Excedrin

prescription. *See id*. He was also seen by Simpson on May 11, 2016, when he claims

Simpson told him she was not renewing the Excedrin prescription and that he could

take Naproxen. *See id*. He claims that in June, Nichols discontinued his prescribed

treatment and that he was seen by Dr. Vilchez on June 22, who still did not renew

the Excedrin prescription. After complaining to various people, Tucker claims

Nurse Melvin renewed the prescription. *See* ECF 22 at 19. Tucker also complains

that Reimers and Bowden denied his appeal. Plaintiff seeks $20,000,000 in

compensatory damages and the same amount in punitive damages as well as in

mental and emotional damages. *See id*. at 20.

In Counts Six and Seven, Tucker appears to make the same allegations against

the same Defendants. *See* ECF Doc. 22 at 20-23. Plaintiff's factual allegations

appear to be a culmination of the facts he asserted under Counts One through Five,

with additional facts regarding the sick call process generally and his dissatisfaction

with it as a means to get prescriptions renewed or see a doctor for continued medical

treatment previously prescribed. *See id*. Tucker seeks $20,000,000 in compensatory damages, and the same amount in punitive damages as well as in mental and emotional damages, for each Count. *See id*.

In Count Eight, Tucker asserts that Jones, Paynter, Coker, Padgett, Wilbert, Lenzo, Richardson, Caldwell, Shaner and Corizon acted with reckless disregard, bad faith and malice and were deliberately indifferent to the seriousness of his condition by allowing Nurse Shaner to issue a false disciplinary report against him. *See id*. at 24. He contends their conduct violated his rights under the ADA and the 1st, 4th, 5th, 8th and 14th Amendments. In support of this Count, Tucker alleges that he could not take Complera, a medication he had been prescribed for AIDS. *See id*. at 24. He contends on January 6, 2016, he went to see Shaner and advised Shaner he could not take Complera. *See* ECF Doc. 22 at 24. Shaner asked him to sign a refusal form to discontinue the medication, and he refused and walked off. *See id*. Plaintiff then went to Wilbert to obtain sick call forms and was asked to wait in the holding cell because he had refused medication. *See id*. He claims that he was then taken to confinement and Lenzo authorized a disciplinary report by Shaner for disorderly conduct. *See id*. On January 14, 2016, a hearing was held before Caldwell and Richardson and he was found guilty and sentenced to thirty (30) days confinement. *See id*. He filed grievances to Coker and Padgett and an appeal to Jones, both of which were denied. *See id*. Plaintiff seeks $10,000,000 in compensatory damages

and the same amount in punitive damages, as well as in $1,000,000 in mental and emotional damages, for each Count.  *See* ECF Doc. 22 at 24.

## II.   LEGAL ANALYSIS

### A. Standard of Review

Because Plaintiff is a prisoner seeking redress from governmental entities and employees, the Court must review the complaint to determine whether it is frivolous, malicious or fails to state a claim.  The Prison Litigation Reform Act of 1995 states in relevant part:

> (b) Grounds for Dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b) (1996); Prisoner Litigation Reform Act of 1995, Section 805(a).

A prisoner's civil rights complaint should be screened as soon as practicable and complaints which are frivolous or fail to state a claim for relief should be dismissed.  *See Brown v. Ridgway*, 845 F. Supp. 2d 1273, 1275 (M.D. Fla. 2012).  Indeed, the purpose of the PLRA was to reduce meritless prisoner litigation.  *See*

*Green v. Nottingham,* 90 F.3d 415 (10ᵗʰ Cir.1996)*;* H.R. Rep. No. 104–378, 104th
Cong., 1st Sess. 166.

Dismissals for failure to state a claim under a § 1915A review are governed
by the same standard as a dismissal under Federal Rule of Civil Procedure 12(b)(6).
*See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11ᵗʰ Cir. 1997).  Because Plaintiff is
proceeding *pro se*, however, the Court must read Plaintiff's  allegations in a liberal
fashion.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Additionally, the Court
should accept as true the facts stated in the complaint and all reasonable inferences
therefrom.  *See Jackson v. Okaloosa Cty., Fla.* 21 F.3d 1531, 1534 (11ᵗʰ Cir. 1994).
The Court should also construe the allegations in the complaint in the light most
favorable to Plaintiff.  *See Hill v. White,* 321 F.3d 1334, 1335 (11ᵗʰ Cir. 2003).

However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic
recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it
tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting
*Twombly*, 550 U.S. at 557).  "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

This "plausibility standard" requires a showing of "more than a sheer possibility" the defendant is liable on the claim. *Id.* The allegations of the complaint must set forth enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the complaint must contain sufficient factual matter, accepted as true, to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

### B. The Defendants.

As a threshold matter, the Federal Rules of Civil Procedure do not allow the joinder in a single action of separate incidents involving different defendants and different sets of facts. *See* Fed. R. Civ. P. 20 (permissive joinder allows multiple defendants to be joined in one action if the right to relief "arises out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action"). Here, Plaintiff has asserted claims based on multiple incidents that occurred between 2014 and 2016, including numerous visits to the medical department, during which Plaintiff was seen by different providers for different reasons; the filing of multiple grievances, which were based on separate incidents and reviewed by different officials; and two (2) disciplinary reports, which also were based on separate incidents and were prepared and adjudicated by different officials. Additionally, Tucker sues some

Defendants in both their individual and official capacities, while failing to designate the capacities in which he sues other Defendants.

As another threshold matter, Tucker's Third Amended Complaint includes Defendants against whom no factual allegations (only conclusory statements) have been pled or who appear to have helped rather than caused any harm to Tucker. Even where Tucker has included a specific factual allegation of wrongdoing against a Defendant, it is insufficient to state a cause of action as to a majority of Defendants, as discussed more fully below.

    1.  <u>Defendants Wilbert, Mayo, Lewis and Gilead Sciences, Inc</u>.

Tucker failed to include any factual allegations of wrongdoing against Defendants Wilbert, Mayo, Lewis or Gilead. Indeed, the undersigned was unable to find a reference to these Defendants in Tucker's 252-paragraph statement of facts. Additionally, Tucker's only allegation as to Defendant Wilbert is that Wilbert asked him to wait in a holding cell after Plaintiff asked for sick sell requests. ECF Doc. 22 (Count 8). Accordingly, the undersigned recommends that Defendants Wilbert, Mayo, Lewis and Gilead be dismissed.

    2.  <u>Defendants Gibson, Melvin, Douglas, Kelly, Dr. Brown and Dr. Schwartz</u>.

Plaintiff has alleged no wrongdoing by Defendants Gibson, Melvin, Douglas, Kelly, Dr. Brown or Dr. Schwartz. To the contrary, the factual allegations as to these Defendants show that they either did nothing wrong or helped Tucker. Tucker states

that he complained to pharmacist, Defendant Gibson, that "he was unable to take the Complera medication due to Nurse M. Nichols not renewing [his] Extra Strength Excedrin pain medication" and that Gibson put him in to see a different nurse, Nurse Melvin.  *See* ECF Doc. 22 at ¶s 146-47.  He further acknowledges that Melvin "promptly renewed my Extra Strength Excedrin and Complera Medication."  *See id*. at ¶ 147.  Those are the only references in the Third Amended Complaint to Defendants Gibson or Melvin, and they are not identified as Defendants under any of the individual counts.

Similarly, although identifying Dr. Schwartz under Counts Two and Three, Dr. Brown under Count Five and Nurse Douglas under Count Two, Tucker alleges that these doctors and Nurse Douglas re-prescribed a 4,000 calorie diet and Ensure supplement – the very treatment he sought.[3]  As to Nurse Kelly, Tucker alleges in Count V that he went to see her on April 18, 2016, for renewal of the Extra Strength Excedrin prescription; he says no more as to her.  Thus, there are also no allegations of wrongdoing as to these Defendants, and the undersigned recommends that they be dismissed.

---

[3] Plaintiff also alleges Brown denied his grievance; for the reasons set forth in Section B.4., Plaintiff has failed to state a claim in that regard.

3.  <u>Defendants Scott, FDOH, Corizon, Centurion, Dr. Rummel, Paynter and David</u>.

Tucker has also not alleged any specific wrongdoing against Defendants Governor Scott; corporate defendants FDOH, Corizon or Centurion; or individual defendants Dr. Rummel, Paynter or David.  Instead, Plaintiff seeks to hold these Defendants liable based on generalized conclusions, which are insufficient to overcome motion to dismiss review.  "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jahairs,* 297 F.3d 1182, 1188 (11th Cir. 2002).  "[T]o survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Commc'ns,* 372 F.3d 1250, 1263 (11th Cir. 2004).

Plaintiff mentions Scott only once in the Complaint and says nothing more than that Scott had a policy to obtain bids from private contractors to provide health care services to save money.  *See* ECF Doc. 22 at ¶ 13.  Similarly, in Paragraph 15, Plaintiff states, generally and also in conclusory fashion, that "his current providers," the FDOH and Centurion, disregarded the seriousness of his condition.  *See id*. at ¶ 15.  Plaintiff fails to include any specific facts supporting that conclusory statement.

The FDOH is not identified as a Defendant under any of the actual Counts of Tucker's third amended complaint.

Additionally, as to Centurion and Corizon, Tucker alleges they conspired with others to make a large profit and to "extort" Plaintiff by requiring him to submit to sick call to renew medical treatments. *See* Counts Two, Three, Four and Five as to Corizon and Count Five as to Centurion.  Plaintiff also seeks to hold Corizon liable under Count Eight for conspiring to make false disciplinary reports.   These allegations, even if true, are insufficient to state a cause of action against these entities for engaging in a constitutional violation.    While "detailed factual allegations" are not required, Plaintiff must present "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

At best, it appears that Plaintiff may be seeking to hold the FDOH, Corizon and Centurion liable for the conduct of their employees (some of the individually named nurses and doctors) who denied Excedrin, Ensure or the 4,000 calorie diet or wrote grievances against him.   Generally, however, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); *Polk Cty. v. Dodson,* 454 U.S. 312 (1981); *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003).  "[T]he

mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell v. Dep't of Soc. Servs. of N.Y .,* 436 U.S. 658, 694 n.58 (1978) (citing *Rizzo v. Goode,* 423 U.S. 362, 370-71(1976)). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

Here, absent the conclusory allegation that Corizon and Centurion participated in a "conspiracy," Plaintiff has not alleged any specific facts that Corizon or Centurion personally participated in not renewing the 4,000 calorie diet pass, Ensure supplement or prescription for Excedrin. Plaintiff has also not alleged that either Centurion or Corizon, itself, had a policy or custom to withhold medication or treatment as part of a money savings plan. *See Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 917-18 (11th Cir. 2017) (to impose liability under § 1983, a plaintiff must prove that a municipality had a "policy or custom" of deliberate indifference that led to the violation of his constitutional right) (citing *Craig v. Floyd Cty.,* 643 F.3d 1306, 1310 (11th Cir. 2011)). The "policy" he appears to contest is the alleged policy requiring him to go to sick call to get medications renewed. The

existence of that policy, alone, does not rise to the level of a constitutional violation, particularly where, even by Tucker's own account, he received treatment.

Similarly, despite including David as a defendant in Count Two for conspiracy, Paynter in Count Eight for conspiracy and Dr. Rummel as a defendant in Count V, Plaintiff has made no factual allegations of wrongdoing as to these Defendants. Accordingly, the undersigned recommends Defendants Governor Scott, Corizon, the FDOH, Centurion, David, Paynter and Dr. Rummel be dismissed.

4. <u>Defendants Jones, Bowden, Harvey, Comerford, Coker, Courtney, Reimers, Padgett, Richardson, Caldwell, Brunson, Williams and Bishop</u>.

It appears Tucker is seeking to hold Defendants Jones, Bowden, Harvey, Comerford, Coker, Courtney, Reimers, Padgett, Richardson, Caldwell, Brunson, Williams and Bishop liable solely for denying his grievance or his appeal or being on the "team" that found him guilty after a disciplinary hearing. The fact that these Defendants denied his grievance or found him guilty after a disciplinary hearing does not, alone, make them liable for the conduct resulting in the grievance (or the disciplinary action), even if the grievance is denied. *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act'

by prison officials does not subject supervisors to liability under § 1983.") (quoting *Shehee v. Luttrell,* 199 F.3d 295, 300 (6ᵗʰ Cir. 1999)); *Lomholt v. Holder,* 287 F.3d 683, 683 (8ᵗʰ Cir. 2002) (holding that defendants' denial of plaintiff's grievances did not state a substantive constitutional claim); *see also Rickerson v. Gills*, No. 5:11cv279/MP/GRJ, 2012 WL 1004733, at *3 (N.D. Fla. Feb. 8, 2012) (finding prisoner failed to state § 1983 claim against prison official whose sole involvement was to review and deny plaintiff's administrative grievance at the DOC Secretary's level of review.), *report and recommendation adopted*, 2012 WL 1004724 (N.D. Fla. Mar. 22, 2012); *Magwood v. Fla. Dep't of Corr.*, No. 3:12cv14/MCR/CJK, 2012 WL 5279178, at *4 (N.D. Fla. Oct. 11, 2012), *report and recommendation adopted*, 2012 WL 5279170 (N.D. Fla. Oct. 25, 2012) (holding that the fact that the assistant warden denied plaintiff's grievance, without more, does not show that the assistant warden personally participated in or caused the termination of plaintiff's medication). Accordingly, the undersigned recommends that Defendants Jones,[4]

---

[4] As to Defendant Jones, Plaintiff also alleges, in conclusory fashion, that Jones decided to subcontract the FDOC's medical responsibilities to inmates to outside corporations owned by Rick Scott, and that "the FDOC Secretary Julie L. Jones has a policy of outsourcing its health care responsibilities to private contractors to save money on inmate costs." ECF Doc. 22 at ¶15. These allegations are conclusory and state no wrongdoing that rises to the level of a constitutional violation. Plaintiff has presented no fact indicating that any policy to save money resulted in him not getting a 4,000 calorie diet pass, Excedrin or Ensure supplement. To the contrary, while various providers over the 2-year period may have failed to renew these treatments for short periods of time, he received these or other treatments throughout the 2-year period identified in his complaint.

Bowden, Harvey, Comerford, Coker, Courtney, Reimers, Padgett,[5] Richardson, Caldwell, Brunson, Williams and Bishop be dismissed.

**C. Plaintiff's Constitutional Claims**.

As to the remaining defendant medical providers, Nurse Simpson, Nurse Szalai, Nurse Nichols, Nurse Shaner and Dr. Vilchez, Tucker alleges that they at separate times non-renewed or discontinued the 4,000 calorie diet pass, Excedrin or Ensure. He also alleges that one or more of these medical providers was involved in wrongfully initiating a disciplinary report against him. As to the remaining prison employees, Captain Shaner and Lenzo, Tucker alleges that they wrongfully authorized a disciplinary report against him. Although Tucker alleges these Defendants violated his rights under the 1st, 4th, 5th, 8th and 14th Amendments, as well as the ADA, the only claims potentially having any factual support are the Eighth Amendment and First Amendment claims.[6]

For the reasons set forth below, these factual allegations, even if true, do not state a claim, even under the most liberal reading of Plaintiff's Third Amended Complaint.

---

[5] Tucker also identifies Padgett as a defendant in Count One of his Third Amended Complaint but fails to state any factual allegations against Padgett in support of that Count.

[6] Tucker has asserted no facts against these Defendants or any other Defendant to support a claim under the 4th, 5th or 14th Amendments. Thus, those claims do not warrant discussion.

1.  Eighth Amendment

"The Eighth Amendment forbids punishments that are cruel and unusual in light of contemporary standards of decency." *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 865 (11th Cir. 2008). The Supreme Court has interpreted the Eighth Amendment to include a prohibition against the "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009)

"Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citations omitted). Moreover, the official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1248, 1258 (11th Cir. 2000).

Here, Tucker has not pled facts sufficient to satisfy any element of a deliberate indifference claim. As stated above, Tucker complains that Defendants Simpson, Szalai, Nichols and Dr. Vilchez failed to renew his 4,000 calorie diet, Ensure or Excedrin. The facts alleged, however, do not show that Plaintiff was deprived of treatment altogether or that these individuals failed to renew these particular treatments for any reason other than that they did not believe he needed them. For example, with regard to Simpson, Tucker alleges that she told him he did not qualify for the 4,000 calorie diet and further that, even though she did not renew his Excedrin prescription, she told him to take Naproxen for pain. Similarly, Plaintiff alleges that Nurse Szalai renewed "all" his passes except Excedrin and that even though she initially prescribed Excedrin she subsequently discontinued it and, instead, increased the dosage of Naproxen. As to Dr. Vilchez, Plaintiff's only allegation is that Dr. Vilchez failed to renew the Excedrin prescription.

It appears that Tucker disagrees with the treatment these medical providers gave to him. However, where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see also Woody v. Cronic*, 401 F. App'x 509, 512 (11th Cir. 2010) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or

treatment, cannot show deliberate indifference.").  Indeed, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[7]  Tucker's allegations simply do not a support a deliberate indifference claim, no matter how liberally or favorably viewed.  Even, for example, if these medical providers should have prescribed Excedrin instead of Naproxen for pain, their failure does not amount to deliberate indifference.  Thus, Tucker's Eighth Amendment Claim should be dismissed.

## 2. First Amendment Claim

Tucker alleges Defendants Simpson, Captain Shaner, Szalai, Lenzo and Nurse Shaner violated his First Amendment rights by filing disciplinary reports against him out of retaliation and denying his grievances.  As the Eleventh Circuit has observed, "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (internal marks omitted).  "To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Id.*

Here, Tucker's allegations fall way short of stating a viable First Amendment claim.  Plaintiff references two (2) instances in which a disciplinary report was filed against him.   In Count One, Plaintiff alleges that Defendant Simpson filed a disciplinary report against him, authorized by Captain Shaner, after he expressed disagreement with her over her non-renewal of his prescribed 4,0000 calorie diet. Plaintiff acknowledges that Simpson renewed "all" of his other medical passes.  ECF Doc. 22 at ¶ 24.   Plaintiff describes the encounter as "argumentative" prior to Simpson calling security and says that Simpson "had Plaintiff locked up for disrespect to officials."   *Id.* at ¶ 34.   Other than citing, generally, to the First Amendment, there are no factual allegations showing that Simpson filed a disciplinary report, or that Captain Shaner authorized one, in retaliation for any protected speech made by Plaintiff.  Indeed, Plaintiff stated that when he went to "DR Court," his defense was to advise the hearing committee of the facts and that the Disciplinary Report was improperly written by a non-employee of the FDOC, as Simpson is employed with Corizon.   *Id.* at ¶ 36.   There is no indication Tucker considered the disciplinary report to have been filed in retaliation for protected speech.  Instead, it appears that he simply disputes that one was warranted.

In Count Eight, Tucker alleges that Captain Lenzo authorized a disciplinary report by Nurse Shaner for disorderly conduct.  ECF Doc. 22 at ¶ 226.  Again, there are no allegations that the report was done in retaliation for any protected speech.  Rather, as with Count One, Tucker acknowledges there was a dispute between Nurse Shaner and Tucker regarding whether he needed to discontinue Complera and that during their encounter, Tucker told Shaner he was not going to sign the refusal and "walked off."  He even admits that he may have raised his voice at Shaner, stating "I am 'completely 100% deaf in my right ear and only have about 80% hearing in left ear, and sometimes I talk loud without realizing it."  *Id.* at 22, ¶ 225.  Plaintiff's conclusory allegation that he has established, through those facts, that "my speech was constitutionally protected; I suffered adverse action such that the allegedly retaliatory conduct would deter a person of ordinary fitness from engaging in such speech, and (3) there is a causal relationship between retaliatory action and the protected speech" is simply insufficient to state a First Amendment claim.  *See Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003).

Moreover, "an inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying the charge after being afforded adequate due process."  *O'Bryant v. Finch*, 637 F.2d 1207, 1215 (11th Cir. 2011).  Tucker admits he was found

guilty (and is suing Brunson, Williams, Bishop, Caldwell and Richardson solely for finding him guilty) of the conduct alleged in the disciplinary reports after hearings.

### D. Immunity

As additional grounds for dismissal of Plaintiff's third amended complaint, Tucker's damages claims against Defendants in their official capacities, as well as his claims against the FDOH, are barred by the Eleventh Amendment.  "Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court." *Gamble v. Fla. Dep't of Health and Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.") (citations omitted).

A suit against a state employee in his or her official capacity is deemed a suit against the state for Eleventh Amendment purposes.  *Will*, 491 U.S. at 71; *Gamble*, 779 F.2d at 1512 (holding that the Eleventh Amendment "will bar damage awards against state officers sued in their official capacities in suits brought in federal court

pursuant to 42 U.S.C.A. § 1983."). Similarly, the FDOH is a state agency for purposes of the Eleventh Amendment. *See Gamble*, 779 F.2d at 1511. Tucker's damages claims against the Defendants in their official capacities, and against the FDOH, thus, fail as a matter of law.

With regard to Tucker 's claims against the Defendants in their individual capacities, "[q]ualified immunity shields government officials executing discretionary responsibilities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal marks omitted). "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal marks omitted). "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Id.* (internal marks omitted). "[A] court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* (internal marks omitted). Here, all Tucker's allegations arise out of action taken within the scope of the Defendants' discretionary authority; and, for the reasons set forth above, Tucker has not alleged conduct that violates clearly established statutory or constitutional

rights of which a reasonable person would have known.  Tucker thus cannot defeat a claim of qualified immunity.

### E. Mootness

Finally, Tucker also is not entitled to declaratory and injunctive relief as those claims are moot in light of his transfer from SRCI to Okaloosa Correctional Institution.  *See, e.g., McKinnon v. Talladega Cty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief.").

### III.   <u>Conclusion</u>

Tucker has had three (3) opportunities to amend his complaint to state a cause of action against the Defendants.  Instead of articulating any viable claim, Tucker has named as a Defendant every medial provider, entity and prison official who interacted with him at Santa Rosa CI during a 2-year period regarding his medical treatment, regardless of their level of actual involvement or culpability, even including individuals who appeared to have helped him.  Plaintiff has also had over 200 paragraphs and 300 pages of exhibits to try to establish a cause of action against any of these Defendants and has failed to do so.  Thus, the undersigned does not find that allowing Plaintiff, even though he is *pro se*, to amend his complaint once again would result in a viable complaint against any Defendant.  Indeed, doing so would be contrary to the PLRA.

Accordingly, it is respectfully RECOMMENDED:

1. That this case be DISMISSED WITHOUT PREJUDICE for Plaintiff's failure to state a claim upon which relief can be granted.

2. That the Clerk be directed to close the file.

At Pensacola, Florida, this 19th day of June, 2018.


*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.**